IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01827-WJM-NRN

RICHARD MAX FLEMING,

Plaintiff,

v.

LARRY D. SIMS,
JEFFREY SIMS,
LDS FINANCIAL CHARTER SERVICES CO., and
BLACTINO ENTERTAINMENT,

Defendants.

---

## REPORT AND RECOMMENDATION ON
## ENTRY OF DEFAULT JUDGMENT
## and
## PLAINTIFF'S REQUEST FOR DAMAGES (DKT. #219)

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This case is before the Court pursuant to Orders (Dkt. ##217, 220) issued by Judge William J. Martinez referring this matter for recommendation on the scope and content of the default judgment to be entered against Defendants Larry D. Sims, Jeffrey Sims, LDS Financial Charter Services Co. ("LDS"), and Blactino Entertainment ("Blactino") (collectively "Defendants"), as well as on Plaintiff Dr. Richard Max Fleming's Request for Damages. (Dkt. #219.) The Court has carefully considered the motion (Dkt. #219) and supporting exhibits. (Dkt. ##224, 226, & 228.) The Court heard argument on the entry of default judgment on September 26, 2018. (Dkt. #233.) The Court has taken judicial notice of the Court's file and has considered the applicable Federal Rules of

Civil Procedure and case law. The Court, now being fully informed, makes the following recommendation.

## I. BACKGROUND

### a. Procedural History

The procedural history of this case is not easily summarized, but a brief recitation of events will be helpful. On July 27, 2017, Dr. Fleming, proceeding pro se, filed suit against several defendants for breach of contract, promissory estoppel, fraud, and assault. (Dkt. #1.) After being ordered to cure certain pleading deficiencies (Dkt. #5), Dr. Fleming filed an Amended Complaint (Dkt. #26) that alleged that the defendants guaranteed him a grant of $250,000 for the licensing and promotion of a patent associated with breast cancer and heart disease research, and agreed to make a $3,800 rent payment for him, but failed to make either payment. (Dkt. #26 at 3-5.) An avalanche of filings ensued, including at least 15 motions by Dr. Fleming for entry of default, default judgment, and related relief. (Dkt. ##66, 67, 70, 72, 78-80, 82, 84, 89, 92, 94 and 115.) He was eventually given leave to file a Second Amended Complaint (Dkt. #144), which he did on January 25, 2018. (Dkt. # 146.) The Second Amended Complaint asserted claims against Defendants Blactino, LDS, and Larry and Jeffery Sims.

Judge Watanabe held a Scheduling Conference on May 3, 2018, at which Defendants were given until June 4, 2018 to answer the Second Amended Complaint and to retain counsel for the corporate defendants, Blactino and LDS. (Dkt. #191.) An Order to Show Cause was entered, and a Show Cause Hearing and Status Conference was set for June 11, 2018. (Dkt. #193.) Defendants were ordered to show cause why

2

default judgment should not enter against them pursuant to Rule 55 for their failure to answer or otherwise respond to Plaintiff's Second Amended Complaint, and for LDS and Blactino's failure to retain counsel. (*Id.*)

Defendants did not appear on June 11, 2018 for the Show Cause Hearing, nor did they answer or otherwise respond to Dr. Fleming's Second Amended Complaint. (Dkt. #202.) Accordingly, that day, the Court recommended that judgment be entered against Defendants Larry and Jeffrey Sims, LDS, and Blactino as a sanction for their failure to comply with the Court's orders and the federal and local rules of civil procedure. (Dkt. #203.)

On August 21, 2018, Judge Martinez adopted Judge Watanabe's Recommendation in its entirety, and referred the matter to the undersigned Magistrate Judge, who was assigned the case after Judge Watanabe's retirement, for a recommendation as to the scope and content of the default judgment to be entered against the Defendants. (Dkt. #217.) The Clerk of Court then entered a Rule 55(a) Default against the Defendants (Dkt. #218), and Dr. Fleming filed the subject motion. (Dkt. #219.)

The Court held a hearing on the entry of default judgment on September 26, 2018. Dr. Fleming and Larry Sims appeared at the hearing by telephone, and the Court heard argument and testimony by both. (Dkt. #233.) The Court took the matter under advisement. (*Id.*)

### b. The Allegations of the Second Amended Complaint

Judge Martinez concisely described the nature of Dr. Fleming's claims as follows:

> In his Complaint, Plaintiff states that "Defendants contractually guaranteed $250,000 to Plaintiff for licensing and promotion of a breast cancer and

3

heart disease patent and a $3800 rental payment on June 29, 2017 (contractual document signed and faxed back to LDS on Wednesday 28th) and confirmed in email to Plaintiff on July 1st." According to Plaintiff, Defendant Larry Sims presented himself as "someone who wanted to help people, including members of the LGBTQ community who could be affected by breast cancer. Mr. Larry D. Sims stated he wanted to make a difference and present a positive face for the LGBTQ community and especially help with the increased risk of African American women and minorities who might have breast cancer." Plaintiff provided his banking information to Defendants because the funds for both the patent and the rent were to be electronically wired to Plaintiff's account.

Defendant Larry Sims did not make the wire transfer, and instead "reported that there were power outages, which set them behind several days." Defendants then posted on their website that Jeffrey Sims, Larry Sims's brother, was hospitalized. According to Plaintiff, Jeffrey Sims was taken to the emergency room on July 7, 2017, but was never hospitalized. Plaintiff claims to have "sent several faxes and emails to confirm the guarantee of the contractually agreed to monies and on each occasion Plaintiff was assured that the error was on the Defendant's end and not the Plaintiffs [sic] and that the funds were guaranteed to come to Plaintiff." According to Plaintiff, Defendant Larry Sims also repeatedly promised to submit the rental check directly to Plaintiff's property manager. On Wednesday, July 12, 2017, Plaintiff and his property manager both spoke to Larry Sims. Plaintiff claims that in those phone calls, Larry Sims promised them that "he was overnighting a check for $3800 for rent payment including late fees and would send the rest of the $250,000 electronically the following week, but wanted to make certain the rent would be taken care of without delay to avoid eviction of Plaintiff."

When the rent check was not received, Plaintiff's property manager sent another fax to Larry Sims on July 13, inquiring about it. According to Plaintiff, Defendant LDS Financial Charter Services (LDS) sent two faxes in response. The first guaranteed overnight payment of the rent check if it had not been sent, again via overnight delivery. The second fax stated, "Defendants were unhappy with the property manager wanting the rent payment and not caring about the Defendants." The second fax also stated that all agreements were being cancelled because Mr. Larry Sims had been in a coma for several days (despite the property manager and Plaintiff having spoken with Mr. Sims by telephone on the 12th). Plaintiff's property manager was instructed by Defendants to not inform the Plaintiff of this." That fax also stated that Defendant Jeffrey Sims would serve as the acting CEO of LDS while his brother was in the hospital. Moreover, Plaintiff claims that "pursuant to the Medical Records departments and the E.R.s of Parkview and St. Mary Cowin Hospitals Mr. Larry D. Sims was not and had not been hospitalized for a coma or anything else." They let Plaintiff know

4

that they were not going to honor the contract for the grant and the rent payment by e-mail three day later, on July 16, 2017.

Plaintiff and his son have now been evicted for failure to pay rent "after detrimentally, reasonably, and foreseeably relying upon the guaranteed rental payment and grant." Plaintiff claims that since then, he has had to "sell his car to make rental payments and pay other costs of living." Plaintiff notified the Colorado Attorney General's office, the Pueblo County District Attorney's office, the FBI, and the website, Ripoff Report. According to Plaintiff, "Defendants sent a fax to the rental office threatening Plaintiff for posting the complaint" on Ripoff Report.

In his Complaint, Plaintiff raises three claims for relief: (1) Breach of Contract and Promissory Estoppel, (2) Fraud, and (3) Assault. Defendants failed to answer or otherwise respond to Plaintiff's Amended Complaint.

(Dkt. #217 at 2-4) (citations and alterations omitted.)

## II. ANALYSIS

### a. Legal Standard

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983) "[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard". *Id.* Ultimately, default judgment is available "when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991). Pursuant to Rule 55(a), default may enter against a party who fails to appear or otherwise defend the case brought against it. However, even after an entry of default,

the Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *Topp v. Lone Tree Athletic Club, Inc.*, No. 13-cv-01645-WYD-KLM, 2014 WL 3509201, at *3 (D. Colo. July 15, 2014) (citations omitted). Under Rule 55(b), the decision to enter default judgment is committed to the district court's sound discretion. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003). When exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir.1991) (internal quotation and citation omitted).

### b. Jurisdiction

The Court has original jurisdiction over this diversity lawsuit pursuant to 28 U.S.C. § 1332. The Court has personal jurisdiction over the Defendants because they were properly served with process on October 24, 2017. (Dkt. ##48-51.)

### c. Default Judgment

In failing to respond or otherwise appear, a defendant admits the factual allegations of the complaint other than those relating to damages. *See* Fed. R. Civ. P. 8(b)(6). *See also Burlington Northern Railroad Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996); § 2688.1 Court's Entry of a Default Judgment—Effect of Default on Proof Requirements, 10A Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.). In addition, the Court accepts the undisputed facts set forth in any affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007). Therefore, the Court must first determine whether the unchallenged facts constitute a legitimate basis for the entry of a judgment on each of Dr. Fleming's four claims for relief.

### i. Breach of Contract Claim

First, the Court turns to Dr. Fleming's breach of contract claim. A federal court with diversity-based jurisdiction over a case applies the laws of the forum state in analyzing the underlying claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir.1995). To state a claim for breach of contract under Colorado law, a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo.1992)).

Based upon the allegations in the Second Amended Complaint and the testimony provided at the September 26, 2018 hearing, the Court finds that Dr. Fleming had a valid contract with LDS. On June 28, 2018, Dr. Fleming and Larry D. Sims, as CEO of LDS, signed an agreement wherein LDS agreed to provide a grant in the amount of $250,000 to Dr. Fleming. (Dkt. 224-2 at 4-5.) Dr. Fleming, a nuclear cardiologist, testified that LDS agreed to provide the grant, along with a $3,800.00 payment for Dr. Fleming's rent, in order to aid him in developing and marketing his patent for nuclear imaging technology, which can be used in detecting breast cancer and heart disease. Larry Sims was interested in making this test available to the public because he knew people, especially those in the black and LGBTQ communities, who would be helped by Dr. Fleming's technology. Dr. Fleming testified that LDS failed to deposit the $250,000

in his bank account and failed to wire the rental payment to his property manager, and that he incurred damages as a result.

While these allegations are sufficient to enter default judgment against LDS, Dr. Fleming does not allege that Larry Sims is individually liable for LDS's breach of the contract. Larry Sims signed the agreement as CEO of LDS. There is no indication that he intended to personally guarantee the funds to Dr. Fleming, and "only extraordinary circumstances justify disregarding the corporate entity to impose personal liability" on corporate officers. *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003). No such extraordinary circumstances exist in this case.

Similarly, the Second Amended Complaint does not establish a legitimate basis for entry of default judgment against Blactino or Jeffrey Sims. Dr. Fleming alleges that LDS is owned by Blactino (Dkt. # 146 at 6). However, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quotation marks and citation omitted). Generally, a parent corporation may be held liable for the contractual obligations of its subsidiary corporation only when the subsidiary is no more than the agent or "alter ego" of the parent corporation. *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1169 (D. Kan. 2006). Dr. Fleming does not allege that LDS is an alter-ego or agent of Blactino.

Finally, Jeffrey Sims is not alleged to have entered into a contract with Dr. Fleming. As discussed above, his mere status as "acting CEO" of LDS does not expose him to individual liability for LDS's contractual obligations. Dr. Fleming has alleged no

8

facts that override the general proposition that "a corporation is always a separate entity distinct from its officers, directors, or investors." *Leonard*, 63 P.3d at 330 (citing *Newport Steel Corp. v. Thompson*, 757 F.Supp. 1152, 1156 (D. Colo. 1990)).

Accordingly, the Court recommends that default judgment enter in favor of Dr. Fleming and against LDS on the breach of contract claim.

### ii. Promissory Estoppel Claim

In addition to his breach of contract claim, Dr. Fleming asserts that Defendants are liable under the theory of promissory estoppel. To recover on a claim for promissory estoppel, a party must establish that (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that promise would induce action or forebearance by the promise; (3) the promisee in fact reasonably relied on the promise to the his detriment; and (4) the promise must be enforced to prevent injustice. *See Peace v. Parascript Mgmt., Inc.*, 59 F. Supp. 3d 1020, 1029 (D. Colo. 2014). But promissory estoppel is "applicable only in the absence of an otherwise enforceable contract." *Scott Co. of Cal. v. MK–Ferguson Co.*, 832 P.2d 1000, 1003 (Colo. App. 1992) *overruled on other grounds by Lewis v. Lewis*, 189 P.3d 1134, 1140 (Colo. 2008). "The alternative remedy of promissory estoppel is never reached when there has been mutual agreement by the parties on all essential terms of a contract." *Id.* (citing *Vigoda v. Denver Urban Renewal Auth.*, 646 P.2d 900 (Colo. 1982)). A claim for promissory estoppel is barred even as to a non-signatory to an enforceable contact where there is a close relationship between the non-signatory and one-of the signatories. *DeFranco v. Storage Tech. Corp.*, 622 F.3d 1296, 1304 (10th Cir. 2010).

As discussed above, Dr. Fleming and LDS entered into an enforceable contract for the payment of $250,000. Dr. Fleming also testified that LDS agreed to make a $3,800 rent payment, which is supported by exhibits showing that LDS employees promised to make the payment to Dr. Fleming's property manager. (Dkt. #146 at 40.) In light of the valid agreement between Dr. Fleming and LDS, Dr. Fleming cannot also assert a promissory estoppel claim against LDS. Moreover, Dr. Fleming's agreement with LDS bars any claim for promissory estoppel against Jeffrey and Larry Sims as well, as they are officers, and therefore agents, of LDS.[1]

For these reasons, the Court recommends that default judgment not enter on Dr. Fleming's promissory estoppel claim.

### iii. Fraud Claim

Next, Dr. Fleming alleges that Defendants engaged in fraud by lying about the status of the payments owed by LDS under the contract. However, as the Court informed Dr. Fleming at the hearing, a fraud claim "cannot be predicated upon the mere nonperformance of a promise or contractual obligation or upon the failure to fulfill an agreement to do something at a future time." *H & H Distribs., Inc. v. BBC Int'l, Inc.*, 812 P.2d 659, 662 (Colo. App. 1990). Under Colorado law, the economic loss rule provides that a "party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Standard Bank, PLC v. Runge, Inc.*, 443 Fed. Appx. 347, 349 (10th Cir. 2011). Thus, "[u]nless the speaker making the representations deliberately falsified his or her intention to induce reliance, statements of future events

---

[1] Dr. Fleming does not allege that Blactino made any promise to him.

10

are not actionable." *Nelson v. Gas Research Institute*, 121 P.3d 340, 343 (Colo. App. 2005). "However, a promise concerning a future act coupled with a present intention not to fulfill that promise" may constitute actionable fraud. *H & H Distribs.*, 812 P.2d at 662.

Dr. Fleming's fraud claim is premised upon the mere nonperformance of the contract. The material misrepresentations that purportedly constitute fraud all happened after the formation of the contract, and simply relate to the excuses given by Defendants for the failure to make the rental payment and the $250,000 grant (i.e., blaming inclement weather, the press of business, and health issues for not abiding by the terms of the contract). (Dkt. #146 at 11-15.) Because his tort claim is not independent of Dr. Fleming's contract claim, it is barred by the economic loss rule. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 n. 7 (D. Colo. 2010) (the economic loss rule "provides that relief in tort—i.e. fraud—does not lie where the party's injury derives solely from breach of the express or implied duties arising in contract").

Accordingly, the Court recommends that default judgment not enter on Dr. Fleming's fraud claim.

### iv. Assault Claim

Finally, the Court will address Dr. Fleming's assault claim. Dr. Fleming alleges that Larry Sims is liable for assault because in a fax, he threatened to sue Dr. Fleming for "everything you got" and told Dr. Fleming to hire an attorney. (Dkt. #146 at 15.) Dr. Fleming states that the "actions taken by the defendants placed [him] in apprehension of harm including physical harm to himself and his son" by "placing [them] in circumstances where they would be homeless and are homeless with constant threat

and loss of any permanent shelter, threatening the physical safety and life of plaintiff and his son." (*Id.* at 16.)

Under Colorado law, the intentional tort of battery and assault requires some sort of harmful or offensive physical contact, or the threat of harmful or offensive physical contact. *Hall v. McBryde By & Through McBryde*, 919 P.2d 910, 913–14 (Colo. App. 1996) (citing Restatement (Second) of Torts §§ 13, 18 (1965)). The conduct described by Dr. Fleming does not implicate the sort of "apprehension of harm" that gives rise to battery or assault liability. Without unpermitted **physical** contact, or the threat such contact, an assault claim cannot be maintained. Thus, the Court recommends that default judgment not enter on this claim for relief.

### d. Damages

Having determined that a default judgment should be entered against LDS on Dr. Fleming's breach of contract claim, the Court must next determine the amount and character of Dr. Fleming's recovery. *See* 10A Charles Alan Wright et al., Federal Practice & Procedure § 2688 (4th ed.). *See also Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984) ("A final default judgment cannot be entered against a party until the amount of damages has been ascertained."). Actual proof must support any default judgment for money damages. *See Klapprott v. United States*, 335 U.S. 601, 611–12 (1949). This rule prevents a plaintiff who obtains a default judgment from receiving more in damages than is supported by actual proof. *See Klapprott*, 335 U.S. at 611–12. Further, pursuant to Rule 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In some situations, that proof is provided in a hearing; however, the Court may enter a default judgment without a

hearing if the amount claimed is "a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).

Dr. Fleming requests that judgment enter in the amount of $4,700,381.88 against Defendants Larry D. Sims, Jeffrey Sims, LDS, and Blactino, jointly and severally. (Dkt. #219-1 at 9.) Dr. Fleming's damages calculation breaks down as follows: "fraud [damages of] $900,000, compensatory damages of $253,800, punitive damages of $3,461,400, attorney, legal fees of $60,540[,] and interest in the amount of $24,681.88." (*Id.* at 10.) However, because the Court recommends that default judgment only enter against LDS on Dr. Fleming's breach of contract claim, it will confine its damages discussion to that discrete issue.

Colorado allows the recovery of foreseeable damages for breach of contract. *See SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 838 (10th Cir. 2016), *cert. denied*, 138 S. Ct. 75, 199 L. Ed. 2d 183 (2017). Damages flowing directly from the breach are commonly referred to as general, or direct, damages. *Id.* Special, or consequential, damages, on the other hand, "compensate for loss 'reasonably . . . supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it,' but not flowing directly from the breach." *Id.* at 838-39 (quoting *Hadley v. Baxendale*, 9 Exch. 345, 156 Eng. Rep. 145 (1854)). However, "[w]here claims for damages are premised on breaches of contracts, damages that are merely speculative, remote, imaginary, or impossible of ascertainment[ ] cannot be recovered." *Colo. Nat. Bank of Denver v. Friedman*, 846 P.2d 159, 174 (Colo.1993) (internal quotations, citations, and alteration omitted).

Here, the Court finds that Dr. Fleming is entitled to damages for LDS's breach of contract in the amount of $253,800, which is the $250,000 grant plus the $3,800 promised rental payment. (*See* Dkt. #227-7 at 2.) Pursuant to Colo. Rev. Stat. § 5-12-102, Dr. Fleming is also entitled to prejudgment interest of "eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs." *Id.* § 5-12-102(1)(b). *See also Smith v. Mehaffy*, 30 P.3d 727, 732 (Colo. App. 2000) ("In breach of contract cases, non-breaching parties have been permitted to recover prejudgment interest from the time of the breach [because t]he theory is that the breach itself makes the conduct wrongful."). The Court finds that the award of prejudgment interest should begin on July 16, 2017, which is the date LDS informed Dr. Fleming that it would no longer do business with him. (Dkt. #146 at 50.)

Dr. Fleming cannot recover his other alleged damages, however. Because Dr. Fleming proceeds pro se, he is not entitled to his attorney's fees. *See e.g., Turman v. Tuttle*, 711 F.2d 148 (10th Cir. 1983) (*per curiam*). He is also not entitled to punitive damages on his breach of contract claim. *See In re Mullaney*, 179 B.R. 942, 945 (D. Colo. 1995) (because "Colorado law does not generally recognize a claim for punitive damages for breach of contract[,]" punitive damages may be recovered only "where the conduct constituting the breach of contract is also a tort for which punitive damages are recoverable"). Moreover, the Court finds Dr. Fleming's claim that he lost revenue of $900,000 in patent licensing fees to be wholly speculative. Dr. Fleming simply relies on a draft Patent and Copyright License Agreement that states that the license fee is

$75,000 per year per site (Dkt. #224-6), and claims that he would have entered into one such licensing agreement every month for 12 months. Dr. Fleming offers no competent evidence or actual proof that supports his position.

Therefore, the Court recommends that Dr. Fleming be awarded breach of contact damages against LDS in the amount of $253,800, with pre- and post-judgment interest of 8% compounded annually from July 16, 2017.

### III. RECOMMENDATION

**WHEREFORE**, for the foregoing reasons, it is hereby **RECOMMENDED** that

- Dr. Fleming's Request for Damages (Dkt. #219) be **GRANTED IN PART** and **DENIED IN PART** as set forth in this Report and Recommendation; and
- Default judgment enter in favor of Plaintiff Dr. Richard Max Fleming and against Defendant LDS Financial Charter Services Co. in the amount of $253,800, with pre- and post-judgment interest of 8% compounded annually from July 16, 2017.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53**

(1985), and also waives appellate review of both factual and legal questions.

*Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999);

*Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Date: October 31, 2018
Denver, Colorado

BY THE COURT

_____
N. Reid Neureiter
United States Magistrate Judge